# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BLACKSTONE CONSULTING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. CIV-17-1118-HE |
| | ) | |
| R&R FOOD SERVICES, L.L.C., and | ) | |
| ROBERT L. BROWN, JR., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Blackstone Consulting Incorporated ("BCI") filed this action in state court against defendants R&R Food Services L.L.C. ("R&R") and Robert Brown, asserting a claim for breach of contract and requesting an accounting, a declaratory judgment, and injunctive relief. Defendants removed the case to this court, and have since answered the complaint. Defendants' answer also asserts counterclaims for (1) breach of contract, (2) fraudulent misrepresentation, (3) conversion, (4) tortious interference with contractual relations, (5) tortious interference with prospective economic advantage, (6) unjust enrichment, and (7) breach of the covenant of good faith and fair dealing. BIC has moved to dismiss counterclaims (2)-(7) pursuant to Fed.R.Civ.P. 12(b)(6).

In considering whether claims should be dismissed under Fed.R.Civ.P. 12(b)(6), the court accepts all well-pleaded factual allegations of the complaint—or in this case the answer—as true, and views them in the light most favorable to the plaintiff, the non-moving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). To avoid dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its

face" and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In other words, the facts alleged in the complaint must allow the court to infer the defendant's liability. Shields, 744 F.3d at 640 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Twombly/Iqbal pleading standard "is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." Id. at 640-41.

**Background**

The background circumstances appear to be largely undisputed, as the allegations of both the petition and counterclaim are consistent. In January 2013, the Oklahoma Department of Rehabilitation Services ("ODRS") selected defendants to operate a food service contract at the U. S. Army post at Fort Sill, Oklahoma. Defendant Brown is a blind licensed manager and the principal of R&R. R&R and ODRS contracted for R&R to operate food services at Fort Sill under the Randolph-Sheppard Act.[1] In February 2013, R&R selected BCI as its subcontractor, or "teaming partner." R&R and BCI entered into a new contract for support services as to the Fort Sill contract in April of 2016. In October of 2016, the Department of the Army issued a "Cure Notice" to ODRS and R&R regarding the food service. R&R and BCI amended their contract in November 2016.

---

[1] *The Randolph-Sheppard Act allows blind individuals to operate vending facilities on federal properties, and gives them priority to operate such facilities.*

2

The counterclaim alleges that, based on R&R's contract with ODRS, ODRS received payments from the food service contract with the Army and distributed those funds into the R&R business account at Bank Leumi USA. It alleges that R&R is the sole owner of that account. The counterclaims further alleges that, in February of 2017, BCI began "sweeping" payments from the account without R&R's approval, and transferred the money to a BCI account. R&R allegedly demanded the bank stop allowing the transactions, and the bank complied. The counterclaim alleges that BCI then began asking ODRS to make payments directly to a BCI account. ODRS allegedly refused, but froze payments from June and July of 2017 totaling over $3.9 million because of the dispute. The counterclaim also alleges ODRS eventually placed the funds in an escrow account by agreement of the parties and that, on August 1, 2017, a court order in a different proceeding removed R&R from operating the Fort Sill contract.

## **Analysis**

Plaintiff's motion challenges all of defendants' counterclaims other than the one based on the parties' agreements. While it appears doubtful that this case will ultimately involve more than a resolution of the parties' competing contract rights, the court concludes it is premature to dismiss now the bulk of defendants' counterclaims.

1. *Claim for fraudulent misrepresentation*

In Oklahoma, the elements of fraud are

(1) a false material misrepresentation, (2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the

truth, (3) with the intention that it be acted upon, and (4) which is relied on by the other party to his (or her) own detriment.

Bowman v. Presley, 212 P.3d 1210, 1218 (Okla. 2009). Under Fed.R.Civ.P. 9(b), the circumstances constituting fraud must be pled with particularity.[2] "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud" and "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." United States ex rel Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006).

Here, defendants claim that they were fraudulently induced to enter into the teaming partner contract based on BCI's false representations that it would assist defendants in becoming independent and eventually able to perform the food service contract without BCI's help. Defendants claim that, contrary to this promise, BCI deliberately acted in a fashion inconsistent with that agreement, that it usurped power and management authority from them, and did not help them become autonomous.

BCI seeks dismissal of this claim for two reasons. First, it argues that while the initial teaming partner contract specified that BCI would provide assistance in way to help defendants become autonomous, the amendment to the contract did not include that provision. BCI claims the omission of the specific contractual provision from the amended contract means it cannot be the basis for a fraudulent inducement claim, relying on authorities dealing with the alteration of contracts by a new contract. That may well be

---

[2] *The parties' submissions address Oklahoma's standards for pleading fraud, but it is the federal standard that applies here.* See *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc., 703 F.2d 1152, 1172 n.11 (10th Cir. 1991).*

4

true as to contractual obligations, but plaintiff's authorities do not speak to a fraudulent inducement claim, which sounds in tort, and there is no apparent reason why such a result would follow. The fraudulent inducement claim goes to the issue of why defendants agreed to team with BCI in the first place. That the language of the contract or the sense of the agreement changed *after* defendants entered into the agreement does not necessarily undercut that claim, and is not a basis for dismissing it here.

Second, BCI argues the counterclaim fails to plead the claim with the necessary particularity. *See* Fed.R.Civ.P. 9(b). While the question is close in some respects, the court concludes the allegations are sufficient to avoid dismissal. The particular representation is spelled out in the contract itself. BCI itself is identified as the entity making the alleged misrepresentation. The timing of the representation is relatively clear from the dates of the contracts. Various specific acts are alleged, such as direct contracts with ORDS and failure to provide periodic reports, which arguably constitute acts usurping or interfering with management authority.

The allegations are sufficient to avoid dismissal of the fraudulent inducement claim.

2. *Claim for conversion.*

Defendants assert that, by sweeping payments out of their bank account, BCI converted the funds. Oklahoma law defines conversion as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Am. Bimedical Grp., Inc. v. Techtrol, Inc., 374 P.3d 820, 825 (Okla. 2016)

(quoting Steenbergen v. First Fed. Sav. & Loan of Chickasha, 753 P.2d 1330, 1332 (Okla. 1987)). The definition "does not include intangible property." *Id*.

BCI argues that the conversion claim should be dismissed, as money is not the type of tangible property that can be converted under Oklahoma law. Defendants counter that Oklahoma recognizes a narrow exception for when banks refuse to release money to depositors, and argues that this situation falls within that narrow exception.

The court declines to attempt to resolve, on the basis of the pleadings, whether BCI's alleged actions do or do not fall within the exception to the general rule as to converting money. *See* Beshara v. S. Nat'l Bank, 928 P.2d 280, 289-90 (Okla. 1996). Doing so seems somewhat of a waste of time at this point, given that Oklahoma appears to recognize some sort of claim for the wrongful taking of money, sometimes referring to it as a "chose in action" and sometimes as "conversion," and that the present argument may simply relate to the name attached to the claim. *Id*. at 289 n.26 (citing Brown v. Okla. State Bank & Trust Co. of Vinita, 860 P.2d 230, 232 n.4 (Okla. 1993)).

In any event, given the nature of the question and in light of the liberal pleading standards generally applicable, the court concludes the claim for "conversion" is not subject to dismissal at this point.

*3. Claim for interference with contractual relations.*

The counterclaim asserts that BCI interfered with R&R's rights under its contract with ODRS by contacting ODRS and requesting that payments under the contract be distributed to BCI's operating account. To state a claim for tortious interference with

6

contractual relations under Oklahoma law, a plaintiff must show that the defendant (1) interfered with a business or contractual right; (2) the interference malicious and wrongful, and was neither justified, privileged, nor excusable; (3) damage occurred as a result of the interference. Tuffy's Inc. v. City of Okla. City, 212 P.3d 1158, 1165 (Okla. 2009).

While the counterclaims allegations as to this claim are thin in some respects, the court concludes it is sufficiently pleaded. The counterclaim alleges R&R had a right to payment of the various funds under its agreement with ODRS. It alleges that BCI interfered with that right, contrary to the parties' agreement, by contacting ODRS and diverting or attempting to divert, the funds. It alleges that, as a result of the interference, R&R's did not receive the June and July contract payments to which it was arguably entitled.

*4. Claim for interference with prospective economic advantage.*

Defendants claim that BCI interfered with their ability to win future contracts from ODRS. They specifically allege that by sweeping $1,000,000 from defendants' operating account and preventing the June and July payments from being deposited in the same account, BCI prevent defendants' access to a sufficient line of credit. Defendants allege that winning future contracts with ODRS is dependent on access to such a line of credit.

The essential elements of this claim are

> (1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship has been disrupted.

Gonzales v. Sessom, 137 P.3d 1245, 1249 (Okla. Civ. App. 2006).

7

As with some of the claims discussed above, the factual allegations as to this claim are thin in some respects. For example, the counterclaim does not identify specific future contracts defendants' may lose. It does, however, identify future business with ODRS as being affected based on its ability to generate a sufficient line of credit. The court concludes these allegations, against the backdrop of the ongoing relationship with ODRS over multiple years and in light of the other allegations as to BCI's claimed interference, are sufficient to state a claim as against the arguments plaintiff advances.

5. *Claim for unjust enrichment.*

BCI asserts the court should dismiss plaintiff's unjust enrichment claim because "Oklahoma does not allow a plaintiff to prevail on an unjust enrichment claim where there is an adequate remedy at law." However, while it is true that an unjust enrichment claim is unavailable if a party has an adequate remedy at law, it is premature to conclude now that defendants' claims are necessarily precluded by the existence of its contract or other claims. Fed.R.Civ.P. 8(e)(2) permits a party to "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Although it appears unlikely that an unjust enrichment claim will still be involved in the final disposition of this case, it is not subject to dismissal at this point.

6. *Claim for breach of covenant of good faith and fair dealing.*

Defendants claim that BCI breached the implied covenant of good faith and fair dealing arising from their contract. BCI argues this counterclaim should be dismissed, as "bad faith" claims are generally limited to the insurance context.

Under Oklahoma law, every contract is deemed to include an implied covenant of good faith and fair dealing. Christian v. Am. Home Assur. Co., 577 P.2d 899, 904 (Okla. 1977). However, breach of the covenant ordinarily gives rise to a claim based in contract, rather than in tort. *See* Cimarex Energy Co. v. Calhoon, No. CIV-11525, No. CIV-11-725-D, 2012 WL 1371386 at **2-3 (W.D. Okla. Apr. 19, 2012). A tort claim for breach of the covenant arises only where there is some "special relationship" between the parties. *Id*. at *3. *See also*, First Nat'l Bank & Trust Co. of Vinita v. Kissee, 859 P.2d 502, 509 (Okla. 1993). Insurance contracts are ones considered to involve such a special relationship, but other commercial relationships or contracts generally do not. *See id.* at 509.

Defendants claim that a special relationship exists here because Mr. Brown is blind or because there was unequal bargaining power between the parties. They cite no Oklahoma authority suggesting that those circumstances constitute the necessary "special relationship" and the court is unaware of any. Against the backdrop of the Oklahoma authorities indicating ordinary commercial relationships do not qualify, the court concludes no basis for an independent tort claim has been stated.

## Conclusion

For the reasons stated, BCI's motion to dismiss [Doc. #10] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the claim for breach of the covenant of good faith and fair dealing to the extent it is grounded in tort. The motion is otherwise **DENIED.**

**IT IS SO ORDERED.**

9

Dated this 21st of December, 2017.

_____
JOE HEATON
CHIEF U.S. DISTRICT JUDGE